We'll hear argument this morning in Case No. 15-1204, Jennings v. Rodriguez. Mr. Gershengorn. Mr. Chief Justice, and may it please the Court, Congress provided extensive substantive and procedural protections for aliens whom the government wishes to remove, but at the same time addressed the real concerns about recidivism and flight risk by providing for mandatory detention during removal proceedings for certain categories of criminal aliens and aliens arriving at our shores. The Ninth Circuit undid that legislative balance, invoking principles of constitutional avoidance to require the government to release those aliens unless the government can prove by a preponderance of the evidence every six months that detention remains necessary. The Ninth Circuit's decision is a serious misuse of the constitutional avoidance canon. With respect to arriving aliens, there is no constitutional problem to avoid.  And with respect to criminal aliens, the text of the statute forecloses the Ninth Circuit's approach, and in any event, the statute is constitutional as written under this Court's decision in D'Amour. The net result of the Ninth Circuit's rigid one-size-fits-all rule is a regime that's at odds with the text that Congress enacted. It undermines DHS's enforcement priorities, and it creates incentives for individual aliens to the extent that they can be removed. The Ninth Circuit's decision is a serious misuse of the statute's rule, and in any event, the statute is constitutional as written under this Court's decision to delay their removal proceedings. Ginsburg. What about 1-2-5-A, that is, aliens who don't fit in either of the categories that you discuss? They are not entrants, and they are not people who have committed qualifying criminal offenses. So they are the 1-2-5-A people. That's right, Your Honor. So for those individuals, they have had bond hearings, or at least they often have had bond hearings. And so we're talking about individuals who either had bond hearings and had them denied or have been unable to post bond. With respect to those individuals who have been denied or have been unable to post bond. Sotomayor, what would be the constitutional entitlement to keeping those people if they're not a flight risk or a risk to the safety of the country or to others, however you want to define that danger element? So what's the constitutional entitlement just arbitrarily to keep someone who's neither of those two things? So with respect to the 1-2-5-A-1 individuals that Justice Ginsburg was talking about, those are individuals who have had bond hearings and had them denied or have been unable to post bond. And the requirement that we are concerned about there is that the government bears the burden of proof to show by clear and convincing evidence every 6 months that they're not a flight risk or not a or not likely to recidivate. And you do clarify two things. One, what are the what have the people in that category done that would make them subject to removal? And two, does the government read the bond specification in 1225a as discretionary? So, Your Honor, the the government's practice with respect to the latter question is to provide bond hearings consistent with the statute, is my understanding. And that and so those are people who have had bond hearings and we do provide them there. And I'm sorry, Your Honor. Your first question. Ginsburg. Who would? Oh, so they may be individuals who have who have entered illegally but have not committed the kinds of crimes that would make them inadmissible under 1182a2 or they or deportable under that would subject them the types of crimes that would subject you to 1226c for the mandatory detention there. And so again, for that class, we are objecting principally to the clear and convincing evidence standard, which we think the Ninth Circuit really had no basis in the statute for adopting. And we provide. Am I right that in bail hearings, it's clear and convincing to show that there is a public danger, but only by a preponderance of the evidence to show flight risk in regular bail hearings? So, Your Honor, it does vary by the type of crime. In some cases, it's the alien who has to I'm sorry, in some cases, it's the criminal who has to show by a preponderance that he's not likely to recidivate or to be a flight risk. In some cases, the government bears the burden by showing in clear and convincing  May I ask a clarifying question? But I think I'll check it. I think not for flight risk. That may be right, Your Honor. I'm sorry. Just a clarifying question. For an alien who is found in the United States illegally, has not been admitted, are they held under 1225B or are they held under 1226A? So they are held under if they are not detained within 100 miles of the border or within 14 days. So they've been there longer than those two things. Then they're under 1226A and not 1226C. So what happens to I don't know how many of these would exist, but an alien who has resided within 14 miles of the border, not 14, how many miles? With 100 miles of the border. 100 miles from the border, that's possible, who's been there for 20 years. They would still be held under 1225? So I'm sorry, Your Honor. They would be held under 1226A. So this is on if they hadn't committed other crimes and so therefore were not subject to the mandatory detention under 1226C. I'm assuming no criminal alien. I'm talking about an alien who has come into the United States illegally without being admitted, who takes up residence 50 miles from the border. I believe the answer is they are held under 1226A and that they get a bond hearing under and this is at I'm sorry, page 156A. Let me finish your question. Earlier you said you were objecting to the burden of proof. Yes, Your Honor. Are you objecting to the concept that prolonged detention without reason is not appropriate for these aliens? So, Your Honor, we believe that they. And the reason is being flight risk or danger. We believe that the whatever due process rights that they have are met by the statutory scheme which gives them an initial bond hearing and then allows them if there are changed circumstances to seek a redetermination. Except that that bond hearing, that additional regulation says that the length of detention is not one of the factors that justifies reconsideration. That's correct, Your Honor. Under our. So if these are people who have been here for decades, let's say, don't you think due process would require some periodic review to ensure that these people are properly being held? So, Your Honor, we don't think that. But two things. First of all, the Ninth Circuit went beyond that and imposed a clear and convincing evidence standard, which we think really does materially change the calculus and change the government's burden there. And second, we do think that the initial bond hearing in conjunction with the opportunity to bring forth changed circumstances, and that may be, that could be. Except the regulations are saying that you don't consider the length of detention. So, Your Honor. That's what a judge does in bail hearings. That's what a judge does in almost every other detention, which is at a certain point your calculus changes, the balance changes when the detention becomes unreasonable. Your Honor, so if I could step back. We do think that the way to think about the case for the people who are not in the arriving aliens category is that as long as what the Court said in DeMoor, and I think this is the focus of Justice Kennedy's concurrence in DeMoor, that if the purpose of detention is being served, that the government is moving reasonably quickly to accomplish removal, and so that we're not in a Zadvydas situation where the end of the government detention can't be observed, then the absent very unusual circumstances, that detention is constitutional. And so we do think that we do think that the scheme we have in place for the 1226A individuals that Your Honor is identifying is constitutional. I will say that hasn't been the case. Kagan. I'm sorry. No, Your Honor, I was going to shift to something else. Well, I was going to shift to something else. Let's do it. Let's shift to 1226C. And not focus on the statute so much, but focus on the constitutional question. And I think your brief indicates that you think that there are some constitutional bounds, and so I'd like you to talk to me about what those constitutional bounds are and when a judge would find them. So, Your Honor, we think the constitutional bound is the standard that Justice Kennedy's concurrence set forth in DeMoore. And we think it is that were there to be, as he said there, were there to be an unreasonable delay by the government, he said the INS, but by the government in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the purpose of detention is not to facilitate deportation, but for some other reason. So it seems to us that the analysis that a court would undertake is, has there been some sort of unusual situation or misconduct on the part of the government, or delay on the part of the government, that suggests the purpose of detention was not to effectuate removal? But as long as the- What happens if you can't point to any particular evidence of government misconduct, but that you're in a situation where the government just has very, very big backlogs, and everything's taking a long time? So let's say the average would be that the government wouldn't make a decision for three years. Could the court simply say, well, three years is too long? It doesn't really matter what kind of evidence you have, three years is too long. So, Your Honor, I think our position in that situation would be that as long as the government was diligently, we, I mean, if it were 20 years, I mean, we could go on, then, of course, that might be a concern that, in fact, we were no longer trying to effectuate removal. I think we would make the argument in the three years Your Honor was hypothesizing, but that's not the situation we have here, and it's been relatively steady. Breyer, you say, you say, right there, you said, of course, 20 years, da, da, da. Now, as soon as you utter words like that, you are outside, and it's inconceiving, I take it, that where it says the AG may release an alien described in paragraph 1, these are the criminal ones. This is 1226. This is 1226. It's 2. It's 1226.2, or something to do. It's C2, say. Oh, I'm sorry. The words that are strongest for you, in my opinion, are those words, only if. Yes. Only if. Correct, in C2. Only if the witness program. Now, you're saying, well, it's not really only if. There are exceptional circumstances where he's been there for 20 years, and we haven't started a removal proceeding, or let's say he has an emergency operation, has to be in the hospital. We all can exercise our wonderful legal imaginations and think of weird instances where it's going to prove that only if isn't literally only if witness. So, Your Honor, I want to be clear about what I'm saying there. I don't think the Attorney General has discretion to release in the situation I was just discussing with Justice Breyer. No, I know that. I think that's a constitutional requirement. In other words, due process would be implicated at that point. So I'm not saying that at some point the Attorney General has discretion to release. The statute is mandatory, and we read the statute. But it says only if, only if you go to the witness program. Correct. But my point was, and you did it accidentally, but on purpose. You said, well, 20 years would be different. I did that. And to be clear, Your Honor, I did it as a matter of constitutional law. Why? Why do it as a matter? Why not just say, like all many things in the law, words like any or only if are always interpreted in light of unusual circumstances, not being absolute, and you get something unusual, okay. Now, why not do that rather than appeal to the Constitution? That may be a picky point, but why? But I think it's important. And Justice Kagan had asked me to set aside the statute. And so it really was a constitutional analysis. And we don't, we really think that Congress, this was a deliberate categorical judgment by Congress based on experience over a long number of years where Congress had tried to deal with the concerns about recidivism in flight for criminal aliens through a number of different mechanisms. And what Congress found was that it was very hard to predict, and it had very serious consequences, and Congress opted for a categorical judgment. Roberts. I suppose it's an area where your safety valve, the availability of habeas corpus might come into play. Absolutely, Your Honor. And I think that goes into the interpretation of constitutional avoidance, both with respect to criminal aliens and arriving aliens. What Congress understood was that it was legislating against the backdrop of habeas, which provides the kind of fail-safe that Justice Kennedy had identified in DeMoor. And therefore, Congress legislated on an absolute, with absolute text, and that doesn't just admit for the kind of exceptions that I think Your Honor is pressing. I understand that this is the case. But if I could go back, General, to the constitutional point, because if you put DeMoor aside, I think we would all look at our precedent and we would say you can't just lock people up without any finding of dangerousness, without any finding of flight risk, for an indefinite period of time and not run into due process. Now, you have DeMoor, but DeMoor was based on the assumption that it was going to be a brief time. It was based on statistics that have now proved to be inaccurate. And the question is why the Constitution itself, and you can do it through habeas proceedings or whatever the procedure is, but why the Constitution itself does not set an outer bound in the way that we've consistently required in, for example, civil commitment cases. All right. So, Your Honor, you've packed a lot in there, and I'd like to take on a number of things there. But the answer to your last question is that I don't think it's the focus on the amount of time that's really the way the Court should look at it here, and this, I think, was the insight in Justice Kennedy's concurrence in DeMoor. The amount of time increases here in part precisely because, as I indicated at the start, Congress has provided a substantial number of substantive and procedural protections for individuals. They have the right to lawyer at their own expense. They have the right to an interpreter. They have the right to present evidence and to gather evidence and to use subpoenas to get evidence. They can appeal to the BIA. They can appeal to the court of appeals. But with that process comes time, and I think a focus on just the length of time without the reasons for the delay, without looking at the fact that aliens routinely and understandably file for continuances, and to impose a rigid six-month rule like the court of appeals did is really a mistake. With respect to DeMoor, though, I really would like to address Your Honor's concern there on a number of situations. Your Honor is right that the statistics we provided to the court were inaccurate and we apologize for that. That was But that's I wasn't even blaming you because I think partially the statistics were provided and partly what the court did with them. It doesn't really matter who was to blame or who wasn't to blame. I was just suggesting that in fact DeMoor says that the average is 5 months. It turns out that the average is more like a little bit over a year. So, Your Honor, so I, the reason why I think DeMoor still is good is, is this reason, I think DeMoor rested on two pillars. First was the judgment that flight risk and recidivism are real problems and that IJs are very bad at predicting and that therefore Congress could make a categorical judgment in this area of immigration law that mandatory detention was appropriate. And second, that unlike Zadvydas, the purpose of the detention was still being served. The purpose of the detention was to effectuate removal and the detention was not going to be permanent and it was not going to be indefinite. Those are true. It is true that this court assumed incorrectly that the length of detention was 5.5 months. But in Kim, in DeMoor itself, the alien had already been, had been detained for more than 6 months, for 197 days. And the court was sending that individual back for an IJ hearing and a BIA appeal. And so even under the court's erroneous assumption that there was going to be 5.5 months tacked on, we're talking about a detention for a year. Now with respect to the time limits, they're not trivial. These are serious, these are serious matters and we recognize that. The current median time for the DeMoor figures is around 233 days now. But it's gone from seven to nine months over the years. And the average time, which is not what we think the court- Or personnel matters are what are inflicting the delay, that that's okay. Is there any, you said 20 years is the end point. But given that we have a due process right not to be held indefinitely, even though it may have a distant point of release somewhere in an unknown period because the government now, I understand, if a alien asks for an adjournment, BIA judges who are overbooked are sometimes taking months to give them another date. At what point does the government's behavior come into this analysis? So, Your Honor, I think the government's behavior- Intentional or not. I mean, I would assume that if the government was just delaying because it wanted to, you would say that's unconstitutional. Absolutely, Your Honor, and I think that is- But at what point does indefinite, I'll bet with a lengthy far-off detention date, become unconstitutional? So, Your Honor, we don't think that the mere date itself is what makes it unconstitutional. But to be clear, I- No, what makes it unconstitutional in my mind is the unreasonable delay or detention. Right, so a couple of points on that, Your Honor. First of all, it is not our view that most of the delays that we're talking about here in the lengthy cases are situations resulting from government resource problems or things of that nature. A lot, the record indicates that aliens routinely seek continuances, and they seek multiple continuances. And they do that for a good reason, which is to build a record. What most of the aliens here are seeking is discretionary relief. And if they're seeking discretionary relief, then they're going to want to build the record. So I don't think the record is that most of the delay is I.J., lack of immigration judges or BIA resources, and indeed, E.R. expedites the proceedings that involve detained aliens, and so that is a government policy to deal with Your Honor's question. Alito, assuming that there is a constitutional limit of the type that's been discussed, is that, do you think that can be addressed in a class action, or is it something that can be addressed only in individual habeas cases? So, Your Honor, we think it's clearly the latter. And we really think that that is one of the major flaws of the Ninth Circuit's decision, is that it adopted a class-wide rigid rule that applies to aliens no matter what is the cause of the delay, no matter whether the alien is a criminal alien or a arriving alien, no matter whether the alien is seeking discretionary relief or not discretionary relief. That one-size-fits-all approach is not the right way to do it. The way to do it is in individual, as-applied challenges through habeas proceedings, which is what the court's. Kagan. Kagan I guess I don't quite understand that. Why couldn't a court, whether it's the Ninth Circuit or whether it's this Court in reviewing the Ninth Circuit, say, here are the constitutional guidelines. Here is the way to enf, it might, it might not be a one-size-fits-all. It might be a presumptive limit, but the ability to go beyond that in individual cases. But to set those, to set those guideposts and then let the individual determinations take place. So in theory, Your Honor, there's, the short answer is the Due Process Clause doesn't usually permit that kind of broad-based approach that doesn't take advantage, take cognizance of the various differences between the aliens on the ground. I think, for example, the difference between a six-month. Kagan But wouldn't it be better to set some guideposts that everybody in the country would know to follow, rather than having one suit pop up here and one suit pop up here and another in another place, and everybody would be treated differently? That does not seem like a good immigration system. So the first thing I would say, Your Honor, is that the one thing that we know shouldn't be the case is what the Ninth Circuit has done, which is the opposite of that, which is apply a single standard to everybody, regardless of, regardless of the cause of the delay. I mean, this gets at the very concern that the Court, that the dissent in Zadvydas, Justice Kennedy's dissent, and then the majority in, in, in DeMoor highlighted, which is that kind of rigid rule creates an incentive for alien to delay, and we wouldn't adopt the clear and convincing standard, which has an incentive to delay. Kagan I wasn't suggesting a rule that was quite as rigid as that, but I was suggesting more that the courts say, pick up some of your language in your brief and say that the detention has to serve the purposes for which the detention is meant, and presumptively that is, pick a number, 9 months, a year, 6 months, whatever. Something pretty reasonable, but only presumptively if there's some exceptional circumstance that could be extended. Katyala, I think it would be within the Court's power to do that. We don't think that's the way we would approach. I think our, our. Kagan I'm sorry. You do or you don't? Katyala, we do not think that's the way we would advise the Court to approach our. Kagan No, no, no. I'm sorry. You're the first one. Katyala, we think the Court would have power to do that. Kagan Okay. Sorry. Katyala, but we don't think that's the way the Court should do it, that what the Court is, what the Court has generally done in a due process situation is have as applied challenges, and we think that's the sensible way to go, given the tremendous variation. Alito In a class action, the Court has to grant or deny relief. And I don't know, what would be the relief if the Court says, well, we're not going to say, you know, what the situation is going to be for any of the members of this class, but here are our thoughts about how individual determination should be made. Katyala I agree with that, Your Honor, and that is why we don't think that's what the Court should do. I think, and so, I mean, to be clear, I think the Court has the power to give guidance, but we don't think that that is the, the approach that's most consistent with the process clause or the way to think about these categories of cases. Sotomayor Well, how about the ABA amicus brief here? I'm sorry, could I just finish, please? I mean, we do suggest in our brief that there are, there are indicators, you know, that, that 90 percent of the IJ hearings are done within 14 months, and 90 percent of the BIA proceedings are done within 19 months, and those, what I think those, we would, those, we would offer those to the Court, not as, as indication that the due process clause has been violated, but those are situations in which one might reasonably, in a as-applied challenge, take advantage of just, take Justice Kennedy's opinion up on its standard and, and do the kind of searching inquiry that we would think about. Sotomayor We are in an upended world when we think 14 months or 19 months is a reasonable time to detain a person. Sotomayor What I, I totally understand that, but what I'm trying to suggest to Your Honor is that that is part and parcel of an overall scheme that offers tremendous process to the individual alien, and that part of the reason for that delay, this is not, Sotomayor But you admit that that process, at least with respect to 1226b, is to ensure that the person's not a flight risk or a danger. Sotomayor Your Honor, it is, it is to effectuate Congress's categorical judgment that those, either that they, that they, there is a risk, a flight risk and a risk of recidivism, and that it's very hard to predict those. Breyer I have a couple of questions I'd like to ask, actually, because it's a complicated statute, and you can correct me if I, I think you have some extra. Roberts Yeah, I'll, I'll give you extra time to answer the questions, if you want. Breyer We're talking about three categories. The first category, the people who show up on the border, that's mostly 1225. I've looked at that. I don't see any words there that would prevent interpreting the statute from saying, of course, you have a bail hearing after 6 months, and under whatever standards, I'm not going with the Ninth Circuit standards, et cetera. I don't see the words. So put that in your mind, because you're going to tell me the words in a minute. But the, the, the more important part, I think, is this criminal part. And there I've divided my mind into three, it's three stages. Stage one, the person is released from jail, let's say, and the statute says, Attorney General, pick him up. And then there's a period of time where he says, I have a right to stay in the United States, and the AG says, you don't. And during that period of time, we have the only if language. And then we go to the period of, there's a final removal order, and that's a 90-day order. And there I see no way around the statute. I agree with you. That 90 days, you cannot get out of the statute. I mean, it's definite. Then the removal period ends, and we're into Zadvitas. And unlike you, I don't think DeMoore overruled the Zadvitas. DeMoore was talking about a brief period of time. So, now, let's start with the criminal. Let's look at that statute. As you would like to interpret it, during that first period, remember, the second period I'm with you, the 90 days. The third period is settled, that's Zadvitas, you've got to let him go after 6 months. So we're talking about the first period. I think, take my word for it, I might be wrong, I'll go back, I did it, I wrote the Zadvitas thing, I think it said 6 months. All right? I might be wrong, I'm often wrong in what I think I said. All right? So we're in the first part. Now, on that first part, it's a pretty odd statute that can say, you don't have to, we can keep you for 2 years, you know, or 3, or 4, you've just been out of jail, hey, your term's over, your punishment's over, but you've got 4 more years here of punishment, while we try to get to stage 2, which is called the removal order. That's what's bothering me. It is bothering me that as a lawyer, it produces an odd statute. As a person who tries to interpret the Constitution, I say, what happened to the notion that you do let people out on bail when, in fact, they're not a flight risk, and how can they be punished for 4 more years? Maybe it's the Constitution. Maybe there's a way around that only if language, but the concern is the same. So now you have all my questions out there, and I know they're, do what you can't. Okay. And I'll try to be brief, because I'm cognizant of the Chief Justice's generosity here. I do think that the statute squarely forecloses it at both stages, Your Honor. We're at page 156A of the appendix to the petition. The statute starts out 1226A, that the alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. May. May. But then it does say may there, but then it says, except as provided in subsection C of this section, and pending such decision, the Attorney General may continue to make. May. But it says except for subsection C, and then subsection C is one that says, unambiguously, shall take into custody and release only if. But C were the criminals. C is the criminals, isn't it? Yes, Your Honor. Okay.  The criminals are a different matter. I'm just talking about the other. Go ahead. Go ahead. Thank you. I'll reserve the balance of my time. Thank you, counsel. Mr. Arulanantham. Thank you, Your Honor. Mr. Chief Justice, and may it please the Court. I actually think the dispute between the parties is narrower than it seems, based on what my friend, the Acting Solicitor General, has just said, because we agree that length by itself doesn't make detention unconstitutional. We agree that there doesn't need to be a hard cap on detention. We're just talking about the need for an inquiry, that is, the need for a hearing that is individualized rather than a categorical presumption that someone is a danger and flight risk. Are you making a statutory argument? And the Ninth Circuit's decision was based on the interpretation of the statute, wasn't it? Yes. So are you making a statutory argument or are you making a constitutional argument? We are making both.  But I still think the dispute is narrower because really the primary focus, Your Honor, is about whether the mechanism for implementing that, whether it's constitutional or statutory constraint, has to be habeas, or instead, as Justice Kagan suggested, it could be some more, as I understood, cap. Well, I understand that, but to me, at least, it makes a difference whether we're interpreting the statute or whether we're interpreting the Constitution. And I'll tell you, on the language of the statute, I think you have a pretty tough argument. Your Honor, we concede that as to 1226C, what you're calling the criminal or mandatory detention subclass, we have to win that there's a serious constitutional problem, because their interpretation is not, you know, completely unreasonable. Well, you can't – is that a constitutional argument or a statutory argument? Well, if there's a fair – Constitutional avoidance isn't just sort of, well, we really don't think we can interpret the statute this way, but we don't have the guts to say that it's unconstitutional. So we're going to put the two things together and say, well, by constitutional avoidance. I don't think – This is what it means. This is what it means. Understood, Your Honor. But we think that the constitutional – the statutory interpretation here is no less plausible than the one in Zadvydas. In Zadvydas, you've got a 90-day mandatory detention period followed by a requirement for release, and then an exception. And the exception says you may be – But what do you do with only if? Well, only if applies to the initial detention. It authorizes people to be released even immediately after they're being picked up if they are in the witness protection program. But it still doesn't speak clearly to what happens when detention becomes prolonged. You know, as I said, in Zadvydas, the statute said you can detain beyond the removal period, but the Court found that that wasn't clear enough to authorize long-term detention in Justice Breyer's case. You have most of it. You have most – Zadvydas turned on the may, you see. It gave him permission. And as he just pointed out, there's may, may, may, may, may, but then in the criminal side, on the criminal side, I'm not talking about people at the border. You have pretty strong argument people at the border. But there it says the attorney general may release an alien described in paragraph 1, those are the criminals coming out, only if, and then it's the witness protection program. So he says, how do you get around that one? Understood, Your Honor. I only want to say one more thing about the statute because I don't want to belabor the point. But, you know, five months, four months after the Zadvydas decision, Congress passed the Patriot Act. The Patriot Act didn't only – it clearly authorized long-term detention in six-month intervals. It said six months. It did it not only in post-order cases, which was speaking directly to Zadvydas, but also in pending cases, that is, cases like this one. So subsection A-7 of that statute authorizes long-term detention, six-month intervals, while the case is pending. And it authorizes substantive review over whether the detention should continue, whether the certification remains valid, but only in national security cases. And that's the rest of our statutory argument. You know, that provision that specifically authorizes long-term detention, but limited to national security cases, in pending cases, really makes the government's interpretation hard to make sense of, because why – you know, under their view, they actually have more authority to detain people with simple possession offenses or with petty thefts than they have people who are accused of terrorism grounds. And they actually have even more authority in terrorism cases under 1226C, under C-1d, than they have under the Patriot Act that Congress gave them four months after. Alitoso, are you saying that 1226A, the Patriot Act provision, makes the government's interpretation of 1226C superfluous? Yes, as to terrorism cases. As to all the terrorism cases, that is, cases where a person is inadmissible or deportable on a terrorism ground, they already had, on their view, more authority in 1996 than Congress gave them. Well, there are different – there are quite noticeable differences between the two provisions. So I don't know how far this argument can go. For one thing, the list of, in 1226A, A, A, 3A, there are listed 1, 2, 3, 4, 5, 6 categories and four of those are not included in the Patriot Act provision. Isn't that right? That's true, but the terrorism grounds are invoked. And the Patriot Act presumably did – meant to focus on terrorism. That's one thing. Under 1226C-1, the Attorney General shall take any – shall take into custody any alien who, all right, under then sub D of that, is inadmissible or deportable so the person must be inadmissible or deportable. And under 1226A, the Attorney General – A, A, 1, the Attorney General – well, what is it? A, A, 3, the Attorney General has reasonable grounds to believe. So it's a different standard. Yes, although the government interprets the language you read about is inadmissible just to mean that they believe it, whether or not it's been charged. But I don't want to belabor the point, Your Honor. We have to establish that there is a serious constitutional problem. There's no question about that. Kagan. Kagan. Can I ask about your statutory interpretation on 1225? Yes. So that's the one where it says the alien shall be detained for, and then one provision says for further consideration of the application for asylum, and the other says for a removal proceeding, and you say that that applies only until the relevant proceeding starts. What applies after that in your view, and where would we find it in the statute? It's 1226A, which says the Attorney General may detain or may release pending a decision on whether the alien is detained. It's a very odd interpretation. There's a for a proceeding. If I tell my children I'm going to visit them for Christmas, that doesn't mean I have to leave on Christmas Eve. It does not, Your Honor, I would hope. That's your interpretation. No, because sometimes for is read that way. Other times for means for the purpose of. And the way you know that in this provision, Your Honor, there's two ways you know it. First, if you are denied a credible fear interview, when Congress rewrote this whole statute, right, they wrote the word pending rather than for into a different subsection, a neighboring subsection, and that's the subsection for people who lose the credible fear interview. They're not in our class. Our class is only people who pass the credible fear interview are found to have a significant possibility of prevailing in their asylum. And I understand that the hearing, the authority ends once the proceeding begins. Then you go to 1226. That's right. Then you go to 1226a, you still had detention authority. And here's the other. It seems to me that's a very odd interpretation of the statute. Well, Your Honor, the other argument for that interpretation is that the government already provides bond hearings to people detained under color of that same statute that you're talking about, the one which says you shall be detained for further consideration of the asylum application. So if you cross the border in the desert and then are arrested and then pass your credible fear interview, the government, you're still under that same statute, shall be detained for consideration of the asylum application, the government gives bond hearings to those people. And it doesn't wait for six months. It gives it to them as soon as they are in the immigration court and therefore pursuing the removal proceedings. So here we have a very straightforward application of Clark v. Martinez. You've got the same statute. It applies to two groups. One are our class members who present themselves at the border. The other are the people who cross in the desert. The government is already providing bond hearings to people who cross in the desert. And that statute doesn't distinguish between the two types of people. Breyer, what happens if they present themselves at the border or the desert and they say I have a right to live in the United States? You've made a mistake in respect to me. What happens to that person? If you're crossed in the desert, you get a bond hearing, assuming that you establish you could be summarily removed. But if you establish, but if you say I don't want to leave. I'm a right, I have a right to live here. Right. Then you get a bond hearing under 1226a if you establish that you have a credible fear of first degree. What happens if you're at the border and you come up and you don't get a bond hearing? Instead, you're only subject to the parole process under which you never get a hearing on danger and flight risk. The deportation officer, the jailer, is the one deciding whether you can get detained even for years. And what's the language of the statute that you believe the government points to to say you never get a bond hearing? I mean, it says shall be detained for, as Justice Kennedy said. It's true. That's what the statute says. But they're reading that language to permit bond hearings for one set of people who are detained under it. And if you can read it for them, you can read it for the other people. This is the BIA's decision in matter of XK. Now, going back to the constitutional question we were discussing earlier and habeas, Your Honor, I think it's actually critically important whether the enforcement mechanism for the right we're talking about here is available to immigrants in immigration court directly or instead has to come via habeas. And the reason why, there's two reasons. First, this is a class of mostly unrepresented people who are obviously not familiar with our legal system. The vast majority are. And we know, both from this record and from experience for years in the lower courts on this, that most of them cannot file habeas petitions. So if you make the only enforcement mechanism habeas, you are going to be able to get a bond hearing. You mean cannot as a practical matter as opposed to a legal matter? Yes, Your Honor. No suspension problem here. As a practical matter, they cannot. And we know this from a matter of experience. In addition, the habeas cases take months to decide. So there's a particular – in fact, in the Eleventh Circuit, they take about 19 months. In the Third Circuit, which is the fastest circuit, they still take almost six. So as a practical matter, it's not a meaningful remedy for prolonged detention if that's the claim that you're bringing. The second serious problem with it is that this Court has never before held that a due process right can be vindicated simply by the availability of habeas. I mean, think about it. Pretrial detainees, they have habeas. Why do they get a bond hearing in a matter of days? Civil commitments. They have habeas. Why is there a requirement that you have a hearing at the outset of civil detention? So it would be a fundamental shift if they – I'm sorry. I missed your argument. They have hearings. Why do they need habeas? No. Excuse me, Your Honor. I apologize for that. This Court has held that there's a hearing requirement as a matter of due process for people in pretrial detention, for people facing civil commitment, et cetera. And that is not dependent on their filing a habeas petition. The Due Process Clause gives that right, and so the hearing has to be provided, whether or not you file a habeas. And so similarly here, if the Due Process Clause requires a hearing at some point in time, it should require that hearing, whether or not the detainee has a lawyer who they can get to file a habeas petition.          Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Does require a little bit of individualized determination as to whether it should be six months or, in a particular case, a little bit longer. How does that get decided, and what vehicle? Well, I still think the vehicle would be this case, and I don't think the fact that it's a class action is a barrier to that. We have sought relief on behalf of people detained for years. And if this court said, for example, that a detainee who's engaged in dilatory tactics is not entitled to a danger and flight risk determination in their case, that's relief that would then be available, because you'd still get the inquiry, right? Somebody has to look at the case at some point and see, is this the case where there's dilatory tactics, or is this a case where actually the person didn't spend even a day in jail, or has- Well, that seems to me to be a strong argument against using a class action as a vehicle to resolve these questions. I mean, if the nature of relief depends upon peculiar circumstances, it seems to me that the commonality requirement's lacking. So let me give a procedural and a substantive answer to that, Mr. Chief Justice. The government did not seek cert on the class cert. They litigated it. They lost it in the Ninth Circuit. They actually re-raised it in the summary judgment. They didn't seek review of it. So they have conceded both typicality and commonality for purposes of this proceeding. Well, but the decision of the Ninth Circuit was based on interpretation of the statute. And you want to go, you want to affirm on an alternative ground, which is that it's unconstitutional. So I don't know how far you can get with that argument. We could, if you want to be very strict about what's before us, we could simply say the Ninth Circuit's interpretation of the statute is wrong and remand for further proceedings to the Ninth Circuit. Yes, Your Honor. I think that would be consistent with the class, the way the government has litigated  But let me also give a substantive answer to Your Honor's question. And it would also be consistent with the way the Ninth Circuit interpreted the case and the case that's here. We do not have the constitutional issue before us. We've argued it in section 1 of our brief, but you're correct that the Ninth Circuit didn't rule on a constitutional ground. Absolutely, Your Honor. The second point I want to make, though, is everybody in the class, in our view, is entitled to an inquiry. Someone has to look at the detention and decide, is this a detention which remains reasonable? Does it continue to be reasonable in relation to its purpose? That's our argument. If many of the people under the injunction don't get out, about 30 percent of them don't even get a bond set, and even of those who do get a bond set, another 30 percent don't actually get out under the bond. So the question is, is that a typical remedy in habeas to require inquiries in every case? It's a perhaps I'm wrong, but I would have thought habeas is either you can be detained or you can't be detained, as opposed to a procedural, across-the-board requirement of a hearing. No, Your Honor. For example, the Humdee decision, the Court requires hearings. That particular case was a habeas, but it sets a due process rule that then applies in other cases. The Court has to determine the conditions under which the detention would be lawful. And as I said, to consign individual detainees here to habeas petitions is effectively to close the courthouse door. Sotomayor, I don't see why the regulations under 1226a are inadequate. There's an entitlement. Zabilas is an administrative, or the response by the BIA or the INS, whatever they're calling it today, was to create an administrative process. So why is the one here inadequate? I mean, our we have very few quarrels with the 1226a regulations that govern people who are entitled to bond hearings. You know, obviously, as they're promulgated now, they wholly exclude people who have certain criminal convictions. Sotomayor, standing on its own, those aliens who have been here for a long time but didn't commit a crime. Yes, Your Honor. I mean, our view, it's said on the briefs, we believe the burden of proof should be on the government by clear and convincing, because that's the standard used in significant deprivations of liberty and for periodic hearings and such. But the most important thing to us is that it be a meaningful hearing. So there has to be a way for the detainee to raise, I was not spent even a day in jail. I was not sentenced even a day in jail, and yet I've spent 10 months in immigration detention. Or, Mr. Rodriguez, I came here at the age of 1. I don't know anybody in the place I'm from, so I'm not a flight risk. Or I'm going to win my case because I'm eligible for cancellation of removal, which is true of more than half of the mandatory subclass. There has to be a way where they can make these kinds of arguments. Sotomayor, why are those arguments not available in the administrative process? They're available under 1226a. If we could get everyone under that statute, then they would be available. I'm looking just at that statute. Yes. I know you want to look at 1225 and 1226c, but I'm looking just at 1226a. Yes. Our position is all of the class should properly be understood, receive the benefit of the 1226a procedures, and our only disagreements with those are in section 3 of our brief, as I said, the burden of proof, and that the hearings be periodic, because sometimes people get detained for, you know, 3, 4 years. I've had clients detained 7 years, and so there has to be some kind of periodic assessment. Sotomayor, periodic review of long-term detentions under 1226a. Correct. But you're not arguing that they have to be, like the Ninth Circuit said, a court review. It can be simply an administrative review. Oh, no, Your Honor. It has to be by a neutral decision-maker, which, you know, we draw in part from Morris C.V. Brewer, which Justice Kennedy cited in the — in your dissent in Zadvydas. There has to be a neutral decision-maker. The ICE officials who are making these decisions are essentially the jailer. They're local detention officers. But you're not — you're not — you wouldn't be quarreling if it was an immigration judge. Yeah, absolutely not. An immigration judge is all that we are seeking with respect to that, Your Honor. And that's not what exists today? Correct. For — it exists for people detained under 1226a, as they understand the statute, but it doesn't apply to the people with criminal convictions or — I'm trying to concentrate on 1226a. Okay, Your Honor. What's wrong with the administrative process? For the — As it exists today. Only that the burden of proof, in our view, should be clear and convincing on the government, and that there should be a periodic hearing, or, as Your Honor suggested, if you take — make them say that length of detention is a relevant factor, so that you can get a new hearing just based on the fact that the time has passed, that would help. But to be clear, Your Honor, well over half of this class is not under 1226a now, right? So we'd have to win — for it to be a meaningful relief for the vast majority of people, we'd also have to win that when detention becomes prolonged, the regulations that govern 1226a then come to govern the — both the arrivings and the people who  Sotomayor, that's pretty hard to do with 1226c. When 1226a says this applies to everything but, the statute's pretty clear on that.  So in that case, Your Honor, let me go back to then the constitutional discussion that we were having earlier. My friend had suggested that that hearing that's available even perhaps only as a matter of the due process clause, that it's sufficient for it to focus on whether the government has engaged — you know, has run proceedings very quickly, so that if a person is engaged in good-faith litigation of a substantial defense, in the government's view, as I understand it, that's a sufficient justification for detention. And that is actually the most serious problem with their view on the due process clause. Because if a person has a substantial defense and they're litigating that in good faith, that does not necessarily mean that their detention is serving a reasonable purpose. In fact, it's almost inversely correlated to it, right? I mean, if a person has a substantial defense, then it's far more likely that they are not a flight risk, because they're going to want to go to immigration court to maintain their immigration status. And similarly, if a person has a substantial defense, that means they're not in a class of people that Congress wanted to mandate the deportation of, which probably means they have a less serious crime. If you are an aggravated felon, for example, you're not eligible for LPR cancellation of removal. Most of the mandatory subclass is eligible for that. But do you think that flight risk and danger to the community are both continuums? Yes, Your Honor. But I think it has to be reasonably related to the detention. So — excuse me, Your Honor. Well, so if you have this situation where the person is litigating in a — there's been lengthy litigation, but the judge can't say this is done in bad faith or it's dilatory. It's just very lengthy, and it keeps going on and on and on and on. And then you have a flight risk that's someplace on this scale, and you have a risk to the community that's someplace on this scale. How can you address how something like that can come out, should come out, with any kind of a categorical rule? So we don't advocate how that person — releasing that person on a categorical rule. We're only talking about getting the inquiry. So we agree that is a very individualized judgment, that the judge has to look at how serious is the criminal history here, how strong are the equities as to flight risk, et cetera. But you do say, or the Ninth Circuit says it has to be clear and convincing evidence, which is higher than the flight risk standard in the standard bail case. It is, Your Honor, although, remember, these are only hearings happening after 6 months. So, you know, you get that bail hearing in a matter of days in the criminal context.  Breyer, is this right? I'm focusing now on the people who want to come into the United States. If they're in the desert and they say, I won't go back because I have a right to live here, they do get a bail hearing. So if the whole thing is taking a long time, they'll at least have a bail hearing. If they're at the border and they're coming in under the same statute, 1225, they say, I'm not going back. I have a right to live here. And then there is no hearing? That's correct, Your Honor. Well, how can that be? I don't get that, because what it says is may throughout, until you get to the word shall be detained for a proceeding under section 1229A. Is that right? That's correct. So I look up section 1229A, and section 1229A, which I've been reading, doesn't say anything about keeping them in detention. So why isn't it the simplest thing in the world once that person is at the border and they say, we're going to detain you for 1229A, you say, have the 1229A tomorrow. And if they don't have it tomorrow, then you say, but I'm into the 1229A. It just hasn't been scheduled yet, and therefore you get bail after six months. Have you tried that one? What did they say? That's our statutory argument. The government says that the regulations, even though the person is in front of an immigration judge, the government says that the regulations prevent the immigration judge from having the power to release the person on bail. So even though the immigration judge is in front of an immigration judge, it's not the statute. So we could say, I mean, I'm just saying you're going to agree with this, which is the problem. I need a disagreement. But the the the the you could say they do it for the desert, the language doesn't forbid it, it throws you into 1229A, it's possible to interpret the statute as saying for purposes of a bail hearing, the 1229A starts tomorrow. Yes, Your Honor. We could do that one on the statute if it is correct that you should not hold a person for years in the United States without giving him a chance to get back to his freedom through a bail hearing, if appropriate. Okay. C. Now, I'm still stuck on C, and the reason, the value of a statutory interpretation is that we're dealing with tens of thousands, hundreds of thousands, or millions of people, possibly. And it's an administrative agency organization, and they need a rule. They need a rule. And if we can interpret the statute, you can give them a rule, and that rule then can have lots of discretion in it through bail hearings, et cetera. But I haven't heard from you yet what I see no way, if you want to tell me, I see no way of getting around the 90 days. That 90 days seems to me to be they don't get a hearing during the 90 days, the removal order is there. So, Your Honor, those people are, I won't indulge you with disagreement, except on this one point, those people are not in our class. If you are in the removal period, we're not interested. Breyer. Okay. Then after we've got Zadvitas, and then before the 90 days starts, they say, well, gee, shouldn't we, shouldn't there be an exception here, so if that, the period between the time they're released from their punishment to the time we have the hearing, if that goes on for 10 years, you know, you can't, the person was supposed to be punished for 6 months, not for 10 years. I got your argument, but I want to know, what do I do with the language? And the, you know, language counts. So I'll give you two thoughts to work on the language, Your Honor. First, assuming nobody is willing to accept 1226C can be interpreted, if every court of appeals said that it could be interpreted, at least to have some reasonableness limit in it, whether a 6-month rule or another one. But if, I can't persuade Your Honors of that. The Due Process Clause, often the Court does use rules of administrability where they are needed to create uniformity of practice. And we've been able to do that. Well, the court below didn't reach your constitutional argument, right? It did not, Your Honor. Do you expect us to do it in the first instance? There's a voluminous record, and it's entirely briefed, so certainly the Court could, but the Court could also remand for consideration. I'm a little bit surprised that you answered the question that way, because it seems to me that it's quite obvious what the court below thinks as to the constitutional question. Where did they get this from, except as an understanding of what the Constitution required? Yes, Your Honor. The court, I think, well the court below. Well, maybe they didn't have the courage of their convictions. I mean, if they do think it's unconstitutional, they could have said so, rather than stretching the principle of constitutional avoidance to the lengths they did. Your Honor, I won't pretend to understand what was in the heads of the Ninth Circuit judges, except that they had seen prolonged detention problems for years. They had decided in 2005 that mandatory detention applied only to expeditious removal proceedings, and there continued to be cases floating up, individual habeas cases. Four years. I had a client four and a half years detained while the government was appealing, seven years, and that was part of why the court thought that we needed a system whether – I mean, I would suggest even if it's on due process grounds, you need a system that is administrable. And, you know, the person doesn't even know – the judge doesn't know when to pull the case off the shelf and look at whether or not to conduct the inquiry, Justice Alito, that you were talking about, unless you have some kind of trigger that allows them to do that. And the time periods – I mean, if you look at, say, the Third Circuit experience, right, they said in 2011 that it had a reasonableness limit as a statutory matter, and that then there should be an inquiry into whether or not the detention remains permissible. And they say we reject a time period because of DeMoor – you know, they've used inconsistent with DeMoor. Sotomayor, is the Savalas – this went – the Ninth Circuit remedy went a lot further than Savalas did. Savalas just created a presumption or did away from – with a presumption. Here, the court is actually requiring. But, Your Honor, it's requiring – DeVitis requires release. This is just the inquiry. So it's actually quite similar. You know, what we're saying is unless removal is imminent – okay, it's just a presumption – unless removal is imminent and there's a two-week window to conduct the hearing under the injunction, you should look and conduct an inquiry to see whether or not danger or flight risk actually justifies the continued detention of this person. It's not – it's not a cap on detention at all. And as I said, many people don't get out. So I think it's quite consistent with the approach that the Court took in DeVitis. But, you know, going back to the question of habeas, you know, versus the constitutional rule, Your Honor, in the Third Circuit, four years later, they're still seeing individual habeases. There's massive disagreement in the lower courts and amongst the immigration judges about, you know, how you count this or how you count that. And then they say, you know, maybe it would be good to have a 9-month, 12-month window. The Eleventh Circuit does the same thing in the Sopo decision. They say, we want to give some guidance, because it can't be that you have to file a habeas petition just to get the inquiry that the statutes, whether – and in my view, even the Due Process Clause should require. And so having some kind of guide, even if it's not as fixed as you have to do it within two weeks of six months, you know, some kind of temporal limit so that the person can go directly to the immigration judge, not to try to get to Federal court, which most of them can't do, go directly to the immigration judge and say, can you please now conduct an individualized inquiry? Roberts. Roberts. First, the problem is that that looks an awful lot like drafting a statute or a regulation. And it seems to me that that's quite a leap. We – our job is if – to read the statute, and if it presents – if it's unconstitutional, that's our job. But we can't just write a different statute because we think it would be more administrable. Shaheen. Your Honor, I think it's not that different from what the Court did in a number of cases, in Riverside v. McLaughlin, in Schnakenberg, where the Court said six months is the maximum time that you can go to prison without a jury trial. You know, and here, it's just a similar kind of administrable rule. You know, even Zadvydas itself – Kagan. An administrable constitutional rule, you're saying. Yeah, and these are all constitutional cases. We're not making up a statute. We're devising a constitutional limit. Correct, Your Honor. These are all administrable rules under the Constitution I'm talking about. McNeil, in the civil commitment context, is a constitutional rule that touched on – Well, just let me make sure. So we're now in the context of deciding the constitutional question, and we put the statute – I know you want us to, and that's fine. I'm just saying it's pretty unusual for us to do that in the first instance. But when you're talking about the administrable rule, that argument is being made on the assumption that it's otherwise unconstitutional. Yeah. The cases that we cite in our brief are all constitutional administrable rules that have been – gone into effect, the ones that I was mentioning. You know, I actually thought that there was a colorable claim that because Congress specifically authorized six months of detention, prolonged detention in national security cases, you could actually read the statute that way. But obviously, that doesn't seem to be particularly persuasive. You know, the last things I'll say, Your Honor, I know my time must be limited. On the relevance of what – Well, you get a few extra minutes, too. Thank you. Thank you so much, Mr. Chief Justice. You know, if you – the record is replete with examples where the immigration judge makes such a big difference because they're just a hearing where you can second guess the – excuse me, not second guess, you know, assess the decision of the jailing authority. So, you know, the Merida Declaration at Joint Appendix, page 518, is one such example. It's a person with a nonviolent criminal history who's detained for three years. He finally gets the individualized assessment. He gets out on $5,000 bail. You know, Exhibit 73 to my declaration, this is this Ethiopian asylum seeker. He's passed the background check. He's passed the background check, and he's found to have a significant possibility of asylum. And now he's going in front of the deportation officer who's conducting this parole review, and the deportation officer just chooses not to believe him. When he finally gets in front of an immigration judge who grants him asylum, you know, the immigration judge says, but you've already passed the background check, and, you know, there's no question from here – and we have a witness now because we're having a hearing – that this person actually is who he says he is. And that's all we're talking about, just a minimal requirement of a hearing in front of a neutral decision-maker for people who have been – had very, very long periods of incarceration. And that minimal requirement, we think, is available under the statute and also under the Due Process Clause. Roberts. Thank you, counsel. Four minutes. General Gershengorn. Thank you, Mr. Chief Justice. I'll be brief. I wanted to make first a short point on the Patriot Act to shore up the construction of 1226C. There are two, as Justice Alito suggested, two fundamental differences with the Patriot Act. The first is that it allows for a certification. It has to be by the Attorney General or the Deputy Attorney General. It can't be delegated. But then that is not reviewable. That's very different than the 1226C, where the alien gets a Joseph hearing and it's subject to BIA review. The second piece of the Patriot Act that makes it very different is that it overrides Zadvydas and actually permits the Attorney General to provide for detention even when there's no foreseeable likelihood of relief. And so it is a situation in which there is, of course, some overlap, as one would expect in a situation in a series of statutes dealing with terrorists. But there is no superfluity, and they're dealing with very different things. It gives extraordinary powers to the Attorney General for a limited group. I also wanted to touch base on to address some of the statutory arguments with respect to 1225. I don't believe, for the reasons Justice Kennedy said, I don't believe that the statute really is ambiguous. It says, and this is on page 152A of the appendix to the petition, the alien shall be detained for further consideration of the application for asylum. And then on 155A, it says the alien shall be detained for a proceeding under section 1229A. Justice Kennedy said the alien shall be detained. Breyer. Breyer. I wasn't thinking of necessarily the asylum seeker. I was thinking of a man who goes to a foreign country who is an alien. He has a family in the United States. He comes back and he says, I want to go home. And the immigration officer says, no, we're going to keep you locked up for 5 years because there was something wrong with your initial application. He says, no, there wasn't. They say, yes, there was. So I'm simply asking if that human being who has a family in the United States is, in the view of the government, locked up for 5 years without any hearing whatsoever without any opportunity for bail, even though he can get out of it simply by abandoning his family and returning to another country, is that the position of the government as to what this statute means? So, Your Honor, the position of the government is that that individual would have an individualized as-applied challenge in a habeas proceeding, but that is not what should drive the statutory interpretation, which is principally what we're talking about here. And not only is it correct, is that correct for the reasons Justice Kennedy suggested about his Christmas visit, but that has been the interpretation of the statute, of that language in the statute since 1917. The shall be detained for formulation exists in the, was in the original statute in 1917. It was in the statute that was enacted in 1952, and it has always been understood as a habeas pretension. Mr. General, I mean, easy enough to say pending a removal decision or pending an asylum decision, and they didn't say that. They said for the consideration of an asylum application, and why would you say that, to say pending an asylum decision? And that's precisely, Your Honor, why I wanted to invoke the history. It's because that is how it's been understood for 100 years, and for literally 100 years, or 99 years, and it has always been understood that the exclusive way to get into the country while those proceedings are pending is through parole. Now, the government does use parole for a lot of these individuals, and so they do their the government is not saying that these individuals don't get any process. They actually get process. They have an IJ look at their, their credible fear determination. They have a lot of those individuals are paroled in. But we don't think you get there as a matter of statutory, statutory construction. There's 1182 D5 is a separate parole authority, and the government's, I'll just finish up with this, the government's position on parole that it paroles in is at the JA44, and it explains how the government applies parole in these situations. Thank you. Thank you, counsel. The case is submitted.